**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 28 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

GABRIEL SMITH and MAI AMIN,            )
                                       )
        Plaintiffs,                    )          CIVIL ACTION
                                       )
vs                                     )          FILE NO. ~~1:25-mi-99999-UNA~~
                                       )          1:25-CV-6152-SCJ
OFFICER MATTHEW P. ABAD, In his        )
Individual and Official Capacity and   )
SERGEANT ANDREW MOLINE, In his         )
Individual and Official Capacity and   )
OFFICER JOHN DOE, In his Individual    )
and Official Capacity and CITY OF      )
ATLANTA                                )
                                       )
                                       )
        Defendants.                    )
_____)

## CITY DEFENDANTS' MOTION TO
## DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**COME NOW**, Defendants City of Atlanta (hereinafter, "the City"), Officer

Matthew P. Abad (hereinafter, "Officer Abad"), by special appearance, and Sergeant

Andrew Moline (hereinafter, "Sgt. Moline"), by special appearance, collectively,

"City Defendants", by and through undersigned counsel, and pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Motion to Dismiss

Plaintiffs' First Amended Complaint (hereinafter "Complaint").  For the reasons

stated herein, City Defendants request that Plaintiffs' Complaint be dismissed with

prejudice.

1

## I.    STATEMENT OF THE CASE

Plaintiffs Gabriel Smith ("Plaintiff Smith") and Mai Amin ("Plaintiff Amin") (collectively, "Plaintiffs") allege that City Defendants are liable for (1) unlawful seizure in violation of Plaintiffs Smith's Fourth Amendment rights, (2) § 1983 malicious prosecution, (3) § 1983 municipal liability, (4) state law malicious prosecution, (5) state law battery, (6) state law false arrest, (7) § 1983 supervisory liability, (8) unlawful search and seizure premised on the Georgia State Constitution, and (9) loss of consortium.[1] The Plaintiffs' Complaint is subject to dismissal for failure to state a claim for which relief can be granted because the Plaintiffs were lawfully arrested and therefore cannot plausibly plead a § 1983 claim or any state claim premised on unlawful arrest against City Defendants.

## II.    STATEMENT OF THE FACTS

Plaintiffs' action stems from allegations that Plaintiff Smith was unlawfully detained and arrested by law enforcement officers without probable cause. (Complaint, ¶ 13). On July 21, 2023, Plaintiff Smith was arrested when the Atlanta Police Department's Narcotics Unit executed a search warrant at 489 Cairo Street, N.W., Atlanta, Georgia (hereinafter, the "subject premises"). (Complaint, ¶ 8). Plaintiff Smith acknowledges that he was an occupant of the home when the warrant was executed but alleges that he that he had no ownership or leasehold interest in

---

[1] Plaintiffs' First Amended Complaint, hereinafter "Complaint," at ¶¶ 22-24; 72-80.

the home and was not engaged in any unlawful or criminal behavior. (Complaint, ¶¶ 9-13). Plaintiff Smith states that illicit drugs located within the home belonged exclusively to the other occupants. (Complaint, ¶ 12). At the time of his arrest, Plaintiff Smith was in possession of a firearm. (Complaint, ¶ 10).

Plaintiff Smith was ultimately charged with trafficking heroin, trafficking cocaine, unlawful possession of marijuana with intent to distribute, possession of methamphetamine with intent to distribute, and possession of a firearm during the commission of a felony. (Complaint, ¶ 30). On October 14, 2024, the Fulton County District Attorney's Office declined to prosecute the charges against Plaintiff Smith. (Complaint, ¶ 21). As a result of these charges, Plaintiff Smith contends that he was subjected to criminal prosecution for over a year and that he suffered harm including loss of employment, damage to reputation, severe emotional distress, financial loss, and loss of consortium. (Complaint, ¶ 33).

### III.    <u>STANDARD OF REVIEW</u>

The Rules of Civil Procedure provide a process for a defendant to move to dismiss a complaint on the ground that the plaintiff failed to state a claim on which relief may be granted. "A Rule 12 (b)(6) motion tests the sufficiency of the complaint against the legal standard set forth in Rule 8: 'a short and plain statement of the claim

showing that the pleader is entitled to relief.'"[2] Therefore, in assessing the merit of

a Rule 12 (b)(6) motion, the court must assume that all factual allegations set forth

in the complaint are true.[3]

"However, conclusory allegations, unwarranted deductions of facts or legal

conclusions masquerading as facts will not prevent dismissal."[4] Rather, a complaint

must plead "factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."[5] Complaints in § 1983 cases

must contain either direct or inferential allegations respecting all the material

elements necessary to sustain a recovery under some viable legal theory.[6]

### *Incorporation by Reference*

Generally, when considering a motion to dismiss, the district court must limit its

consideration to the pleadings and any attached exhibits.[7] If the parties present, and

the court considers, evidence outside the pleadings, the motion to dismiss generally

must be converted into a motion for summary judgement.[8] An exception to the

---

[2] *Acosta v. Campbell*, 309 F. App'x 315, 317 (11th Cir. 2009) (quoting Fed. R. Civ. P. 8 (a)(2)).

[3] *See* e.g., *United States v. Gaubet*, 499 U.S. 315, 327 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990).

[4] *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Randall v. Scott*, 610 F.3d 701, 708 n. 2 (11th Cir. 2010).

[7] *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1276 (11th Cir. 2023).

[8] *Id.*

conversion rule is the incorporation by reference doctrine.[9] Under the incorporation by reference doctrine a court may consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if 1) the plaintiff refers to certain documents in the complaint; 2) those documents are central to the plaintiff's claim; and 3) the documents' contents are undisputed.[10] Where a video is clear and obviously contradicts the plaintiff's alleged facts, the court accepts the video's depiction instead of the complaint's account,[11] and views the facts in the light depicted by the video.[12] In *Johnson v. City of Atlanta*, 107 F.4 1292, 1300 (11th Cir. 2024) the 11th Circuit Court of Appeals further clarified that the incorporation-by-reference doctrine allows federal trial courts within Florida, Georgia, and Alabama to consider documents on a motion to dismiss or motions for judgment on the pleadings that were not referenced in or attached to the complaint if the document is 1) central to the Plaintiff's claims, and 2) undisputed.

The City hereby incorporates body worn camera footage of the Plaintiff Smith's arrest, as well as his interaction with law enforcement during and after the search warrant was executed at the subject premises, pursuant to the incorporation by reference doctrine.[13] The body worn camera footage is central to the Plaintiffs'

---

[9] *Id.*
[10] *Id.*
[11] *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010)
[12] *See Scott v. Harris*, 550 U.S. 372, 381 (2007)
[13] Def COA MTD Videos Smith v. COA et al.

claims against all named defendants and is an unaltered and accurate depiction of the events surrounding Plaintiff Smith's arrest. The body worn camera footage demonstrates probable cause for the arrest of Plaintiff Smith for trafficking in illegal drugs,[14] possession of marijuana with intent to distribute,[15] possession of methamphetamine with intent to distribute,[16] and possession of a firearm during the commission of a felony[17] (hereinafter, the "subject charges").

### III.    ARGUMENT AND CITATION OF AUTHORITY

### A. CITY DEFENDANTS CANNOT BE HELD LIABLE FOR UNLAWFUL SEIZURE BECAUSE THE PLAINTIFF WAS LAWFULLY ARRESTED.

This Court should dismiss Count I in its entirety because the Plaintiffs were not unlawfully seized. It is well established that an arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment.[18] It therefore follows that an arrest with probable cause is a lawful seizure.

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures."[19] However, "[t]he existence of probable cause

---

[14] O.C.G.A. § 16-13-31.
[15] O.C.G.A. § 16-13-30(j).
[16] O.C.G.A. § 16-13-30(b).
[17] O.C.G.A. § 16-11-106.
[18] *Stewart v. City of Montgomery*, 2016 WL 1254606 (N.D. Ga. 2016) at *4 citing *Brown v. City of Huntsville, Ala.* 608 F.3d 724, 734 (11th Cir. 2010).
[19] *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007).

is an absolute bar to a claim of unlawful arrest under . . . the Fourth or First Amendment."[20] "An officer has probable cause to arrest if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[21]

The body-worn camera footage, incorporated by reference, shows that Plaintiff Smith was an occupant of a home where a search warrant was executed and a large quantity of illicit drugs was found. When officers first enter the home, Plaintiff Smith, who can be seen wearing a green shirt, is located in the living room and is asked to crawl out of the home with the other suspects.[23] Officer Abad's bodycam footage depicts the subsequent search of the residence, revealing large quantities of illicit drugs in plain view in the living room, where Plaintiff Smith was first located, as well as in other areas of the home.[24] When an officer speaks with Plaintiff Smith at the scene, Plaintiff Smith's only statement beyond basic

---

[20] *Ruch v. McKenzie*, 2019 WL 1407012, at *5 (N.D. Ga. Mar. 28, 2019) (citing *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.")).
[21] *Ruch*, 2019 WL 1407012, at *6 (citing *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016)).
[23] Axon Body 3 Video 2023-07-21 1102 X60A9599Q, hereinafter "Axon BWC", beginning at 0:06:00/0:32:02.
[24] Warrant 489 Cairo, hereinafter "Abad BWC", beginning at 0:32:20/2:31:47.

identifying information is "That firearm is mine. The one she took off my person, that one is mine. And anything else, I'd like to speak to an attorney for the rest."[25]

Plaintiff Smith's contention that he was unlawfully seized in violation of his Fourth Amendment rights rests on his allegation that officers had no reasonable belief that he was in actual or constructive possession of the illicit drugs. (Complaint, ¶ 30). However, it is well-settled that "[a] person who, though not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing is then in constructive possession of it.."[26] "Circumstances showing an intent to exercise control over the drugs include…the presence of significant amount of contraband and drug paraphernalia in plain view."[27] Possession, for purposes of drug trafficking, "may be joint or exclusive."[28]

The undisputed facts, as seen in the body worn camera footage, show that Plaintiff Smith was first encountered in a room[29] where a large quantity of illicit drugs were in plain view.[30] Moreover, the body-worn camera footage shows that, after acknowledging ownership of the firearm, Plaintiff Smith invoked his right to

---

[25] Axon Body 3 Video 2023-07-21 1103 X60A9266R, hereinafter "Reeves BWC", beginning at 1:04:20/2:38:05. Upon information and belief, Officer Reeves' body worn camera was being used by Investigator Griffin at this time in the video.

[26] *Uriostegui v. State*, 269 Ga. App. 51, 53 (2004).

[27] *Brown v. State*, 375 Ga. App. 386, 390 (2025) (citing *Kier v. State*, 292 Ga. App. 208, 210 (1) (2008)).

[28] *Holloway v. State*, 297 Ga. App. 81, 82 (2009).

[29] *See* Axon BWC beginning at 0:06:00/0:32:02.

[30] *See* Abad BWC beginning at 0:32:20/2:31:47.

remain silent.[31] Accordingly, Plaintiff Smith was in "the presence of a significant amount of contraband" and Officers were unable to exclude him as a suspect at the scene. Viewing the facts in the light depicted within the body worn camera footage, probable cause existed prior to the lawful arrest of Plaintiff Smith for the subject charges. The existence of probable cause in the underlying arrest is an absolute bar to Plaintiff Smith's unlawful seizure claim.

1. **Plaintiff Smith's Unreasonable Search and Seizure Claim Premised on the Georgia Constitution must, likewise, be dismissed.**

In addition to a Fourth Amendment violation under the U.S. Constitution, Plaintiff Smith also alleges that Defendants violated his rights under Article I, Section I, Paragraph XIII of the Georgia Constitution. The language in the Georgia Constitution is as follows, mirroring the language in the U.S. Constitution:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.[32]

Because this provision is effectively identical to the Fourth Amendment to the U.S. Constitution, the existence of probable cause likewise serves as an absolute bar to Plaintiff Smith's claim under the Georgia Constitution.

B. **PROBABLE CAUSE BARS THE PLAINTIFF'S CLAIM FOR MALICIOUS PROSECUTION UNDER § 1983.**

---

[31] *See* Reeves BWC beginning at 1:04:20/2:38:05.
[32] Ga. Const. art. I, § I, para. XIII.

This Court should dismiss Count II of Plaintiffs' Complaint because the Defendants had probable cause to arrest Plaintiff Smith for the subject charges, precluding a viable claim of malicious prosecution. In addition to establishing the elements of the common-law tort of malicious prosecution—"(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused"—a plaintiff asserting malicious prosecution under § 1983 must establish that there was an unreasonable seizure made in violation of the Fourth Amendment, such as an arrest made without probable cause.[33]

Plaintiff Smith can never establish two vital elements of malicious prosecution under § 1983 which are: 1) malice and without probable cause; and 2) that there was an unreasonable seizure made in violation of the Fourth Amendment, such as an arrest made without probable cause.[34] The presence of probable cause precludes all of Plaintiff Smith's claims, including malicious prosecution. As analyzed and established above, Defendants did not unlawfully seize Plaintiff Smith and therefore did not violate Plaintiff Smith's Fourth Amendment rights. Accordingly, Plaintiffs' malicious prosecution claim must be dismissed.

---

[33] *Manners v. Cannella*, 891 F.3d 959, 975 (2018) (citing *Wood v. Kessler*, 323 F.3d 872, 882 (2003).

[34] *Manners*, 891 F.3d at 975

## C. PLAINTIFF CANNOT ESTABLISH *MONELL* LIABILITY AGAINST THE CITY.

Count III of Plaintiffs' Complaint alleges municipal liability premised on the City's purported failure to train its police officers.[35] To impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation.[36] "A municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation'."[37]

In *Monell v. New York City Department of Social Services*, the U. S. Supreme Court held that § 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor" and has "consistently refused to hold municipalities liable under a theory of *respondeat superior*."[38]  Instead, municipal liability under *Monell* requires a showing that a policy, practice, or custom of the municipality caused Plaintiff's alleged injury.[39]

---

[35] *Id.* at ¶¶ 149-178.
[36] *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).
[37] *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).
[38] *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 689 (1978).
[39] *Board of the County Commissioners*, 520 U.S. at 403.

11

However, "it is not enough for a §1983 plaintiff merely to *identify* conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."[40] In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability *and* must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[41]

### 1. Plaintiff's "Failure to Train" Theory Is Without Merit.

The U.S. Supreme Court has instructed that "there are only 'limited circumstances' in which an allegation of a failure to train [or to supervise] can be the basis for liability under § 1983."[42] These limited circumstances occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's constitutional rights."[43] A plaintiff may prove a city policy by showing that the municipality's failure to train [or supervise] evidenced a "deliberate indifference" to the rights of its inhabitants.[44] To establish a "deliberate or conscious choice" or such deliberate indifference, a plaintiff must present some evidence that

---

[40] *Id.*

[41] *Id.*

[42] *City of Canton v. Harris*, 489 U.S. 378, 387 (1989); *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998).

[43] *City of Canton*, 489 U.S. at 389-91.

[44] *Id.* at 388-89.

the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action.[45]

Plaintiff Smith's failure to train argument is premised on his individualized experience with the officers who executed the search warrant. (*See generally*, Complaint). However, a single incident, without more, is insufficient to impose *Monell* liability under this theory.[46] Additionally, as a matter of law, the City must be on notice that adequate training was needed and chose to ignore said necessity.[47]. In an effort to prove "deliberate indifference" by the City and presumably notice, Plaintiffs vaguely refer to "a pattern or widespread practice by APD officers of making arrests without probable cause, filing false or misleading reports, and pursuing criminal charges absent sufficient evidence." (Complaint, ¶¶ 54-55). Plaintiffs provides no specific examples, and threadbare allegations are insufficient to establish a municipal policy, custom, or pattern under *Monell*.

Compounding Plaintiffs' faulty argument is the fact that he has not alleged an articulable Constitutional violation by any of the officers at the scene. Rather, Plaintiff Smith admits that he was in the home when the search warrant was executed, and the body worn camera footage demonstrates that he was in the

---

[45] *Gold*, at 1350-51 (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397 (1997)).

[46] *Id.* at 1350-52.

[47] *Id.*

13

presence of a plain view contraband. Accordingly, the officers had probable cause to effectuate Plaintiff Smith's arrest, and Plaintiff Smith has failed to allege a failure to train claim that would subject the City Defendants to *Monell* liability.

### D. SERGEANT MOLINE IS NOT LIABLE UNDER THE THEORY OF SUPERVISORY LIABILITY UNDER 42 U.S.C. § 1983, BECAUSE THERE WAS NO CONSTITUTONAL VIOLATION.

While it is true that an officer, supervisory or otherwise, can be liable for failing to intervene when a constitutional violation occurs,[48] no such violation occurred here. As analyzed above, Plaintiff Smith's arrest did not violate his Fourth Amendment rights, as the officers had probable cause to effectuate this arrest based on the facts and circumstances within their knowledge at the time of Plaintiff Smith's arrest. Accordingly, Sergeant Moline cannot be liable for supervisory liability under 42 U.S.C. § 1983.

### E. PROBABLE CAUSE FORCLOSES PLAINTIFFS' STATE LAW CLAIMS.

#### 1. Plaintiff cannot prove malicious prosecution under O.C.G.A. § 51-7- 40.

This Court should dismiss Plaintiffs' state law malicious prosecution claim because Plaintiffs cannot satisfy all the elements of this claim. The six essential elements of a malicious prosecution claim are "(1) prosecution for a criminal

---

[48] *Slaughter v. Bryson*, No. 5:15-CV-90, 2018 WL 1400976, at *13 (S.D. Ga. Mar. 20, 2018) (("[I]f a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable[.]").

offense; (2) instigated without probable cause; (3) with malice; (4) under a valid

warrant, accusation or summons; (5) which has terminated favorably to the plaintiff;

and (6) has caused damage to the plaintiff."[49]

Plaintiffs allege that Officers Abad and Moline had "no factual or legal basis"

to believe Plaintiff Smith had committed any crime and that they approved warrants

for his arrest containing "false representations and material omissions." (Plaintiffs'

Complaint, ¶¶ 64-65). Plaintiff Smith further asserts that Officers Abad and Moline

did so to subject him "to criminal prosecution despite knowing that no probable

cause existed for the charges alleged." (Plaintiff's Complaint, ¶ 66).

However, as argued above, Plaintiff Smith was present in the home when the

search warrant was executed and was in the vicinity of a large quantity of

contraband. In his only substantive comment to the officers, Plaintiff Smith claimed

ownership of the firearm and declined to provide further information. Accordingly,

there is no merit to the assertion that Officers Abad and Moline lacked any factual

or legal basis to believe Plaintiff Smith had committed any crime. Plaintiff Smith's

allegation that this evinces "malice" is meritless. Moreover, probable cause is an

absolute defense to the claim of malicious prosecution.[50] Accordingly, the Plaintiffs'

---

[49] *Renton v. Watson*, 319 Ga. App. 896, 898 (2013) (citing *Wal-Mart Stores v. Blackford*, 264 Ga. 612, 613 (1994)).
[50] *Holmes v. Anchor Center, Inc.*, 260 Ga. App. 882, 884 (2003).

state law malicious prosecution claim must be dismissed because, as analyzed above, there was probable cause for Plaintiff Smith's arrest.[51]

## 2. Plaintiff cannot prove false arrest premised on false arrest or false imprisonment.

"'Malicious prosecution differs from malicious arrest only in that in the former case there must be a carrying on of the prosecution.'"[52] Unlike malicious prosecution, "the mere existence of probable cause standing alone has no real defense bearing on the issue of liability."[53] A defendant must not only show that probable cause existed, but also that "exigent circumstances obviated the need to obtain a warrant."[54] These exigent circumstances are outlined in O.C.G.A. § 17-4-20. While this statute cites specific examples where warrantless searches are permitted, it also includes a broad provision that officers may arrest suspect "for other cause if there is likely to be a failure of justice for want of judicial officer to issue a warrant."[55]

In *Kline v. KDB, Inc.* 295 Ga. App. 789 (2009), the Georgia Court of Appeals contemplated this standard in the context of the Georgia Supreme Court's opinion

---

[51] *Holmes,* 260 Ga. App. at 884.

[52] *McQueary v. Atlanta Airlines Terminal Corp.*, 198 Ga. App. 318, 318, 401 S.E.2d 333, 334 (1991) (citing Hatcher v. Moore, 133 Ga. App. 14(1) (1974)).

[53] *Scott Hous. Sys., Inc. v. Hickox*, 174 Ga. App. 23, 24, 329 S.E.2d 154, 155 (1985).

[54] *Hill v. Georgia Power Co.*, 786 F.2d 1071, 1078 (11th Cir. 1986).

[55] O.C.G.A. § 17-4-20.

in *Durden v. State*, 250 Ga. 325, 326 (1982). In *Durden* the Supreme Court held that the standard for whether a warrantless arrest is valid is simply "probable cause."[56] The Court of Appeals adopted this standard in the context of the "failure of justice" exigent circumstance, concluding that "an arrest is constitutionally valid if, at the moment the arrest is made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense."[57]

As averred above, the facts and circumstances within the officers' knowledge at the time of Plaintiff Smith's arrest support a finding of probable cause. Plaintiff Smith was present in a home where illicit contraband was located in plain view, and the officers could not exclude him as a suspect at the scene. Accordingly, the exigent circumstances at the scene supported a finding of probable cause, which precludes Plaintiff Smith's claim for false arrest or false imprisonment.

### 3. Plaintiff's battery claim is precluded by probable cause.

Plaintiffs' claims for assault and battery premised on an unlawful arrest fails because, as analyzed above, Defendants had the requisite probable cause to arrest

---

[56] *Kline v. KDB*, Inc. 295 Ga. App. 789 (2009) (citing *Durden v. State*, 250 Ga. 325, 326 (1982)).
[57] *Durden*, 250 Ga. at 326 (1982).

Plaintiff Smith for the subject charges. Additionally, Plaintiffs' fail to demonstrate actual malice with regard to the claim of assault and battery, as "[t]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."[58]

### 4. If Plaintiff Smith's state law claims are dismissed, Plaintiff Amin's loss of consortium claim must also be dismissed.

The Georgia Court of Appeals is clear that "[w]hen both spouses sue an alleged tortfeasor in a single action, a judgment against the injured spouse necessarily precludes recovery on the other spouse's loss of consortium claim."[59] Accordingly, if this Court finds that Plaintiff Smith's malicious prosecution, false arrest, and battery claims are foreclosed by the existence of probable cause, Plaintiff Amin's loss of consortium claim is necessarily subject to dismissal, as well.

### 5. Plaintiff Smith's request for declaratory judgment and expungement/sanitization of criminal record is not ripe.

Plaintiffs' claims against the City Defendants for declaratory judgment and expungement of criminal records are not yet ripe. Pursuant to O.C.G.A. § 35-3-37(k)(1), *when a criminal history record has been restricted*, the center shall notify the arresting law enforcement agency of such restriction, *and the agency shall restrict access to such information*. However, in this case, Plaintiff Smith has neither

---

[58] *Taylor v. Waldo*, 309 Ga. App. 108, 111 (2011) (citing *Tittle v. Corso*, 256 Ga. App. 859, 863 (2002)).

[59] *Priester v. Turner*, 370 Ga. App. 269, 270 (2023).

alleged nor shown that he has complied with the prerequisites of having his record expunged, *i.e.* petitioning *the court in which he was accused* to restrict access to his criminal history. Therefore, the City Defendants, had no duty or requirement to restrict access to Plaintiff Smith's criminal record.[60] Here, the condition precedent to the City Defendants' action, *i.e.* receiving notice that Plaintiff Smith's criminal record has been expunged or restricted, has not occurred. Thus, the City, through APD, the arresting agency, is not required to restrict access to Plaintiff Smith's record and did not violate Plaintiff Smith's constitutional rights.

## F. DEFENDANT EMPLOYEES ARE ENTITLED TO QUALIFIED IMMUNITY.

This Court should dismiss all claims against Officer Abad and Sgt. Moline because the Defendants' qualified immunity bars said claims. In a § 1983 action, qualified immunity protects public officials from lawsuits brought against them in their individual capacity. 42 U.S.C. § 1983.[61] Under the doctrine of qualified immunity, "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate

---

[60] O.C.G.A. § 35-3-37(j)(1)(2024).
[61] *See Young Apartments, Inc. v. Town of Jupiter, FL*, 529 F.3d 1027 (11th Cir. 2008).

clearly established statutory or constitutional rights of which a reasonable person would have known."[62]

Qualified immunity balances two important public interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[63] When a government official raises the "defense of qualified immunity, we first consider whether the defendant government official has proved that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred."[64] "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."[65] "To overcome a qualified immunity defense, the plaintiff must make two showings."[66] "First, the plaintiff must establish that the defendant violated a constitutional right."[67] "Second, the plaintiff must show that the violation was clearly established."[68] "Both elements must be satisfied for an official

---

[62] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[63] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[64] *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294–95 (11th Cir. 1998) (alteration and quotation marks omitted).

[65] *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

[66] *Christmas v. Harris Cnty.*, 51 F.4th 1348, 1354 (11th Cir. 2022) (quotation marks omitted).

[67] *Id.* (emphasis and quotation marks omitted).

[68] *Id.* (emphasis and quotation marks omitted).

to lose qualified immunity."[69] These two elements can be analyzed in whatever order is most appropriate for the case.[70]

### 1. Defendants were performing a discretionary function

As a preliminary matter, Defendants Abad and Moline are entitled to qualified immunity because they were performing a discretionary function when they placed the Plaintiff Smith under arrest. To determine if there is discretionary authority, the court examines whether the official was performing a legitimate job-related function through a means that was within the official's power to utilize.[71] "A public official acts within the scope of [their] discretionary authority where the acts complained of were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority."[72]

Plaintiff Smith alleges that Officer Abad and Sgt. Moline violated his Fourth Amendment rights by arresting him "without valid probable cause." (Plaintiff's Complaint, ¶ 32). However, as averred above and based on the body worn camera footage, the "facts and circumstances within the [officers'] knowledge"[73] – specifically Plaintiff Smith's presence in a home with a large quantity of illicit

---

[69] *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010).
[70] *Pearson*, at 236.
[71] *Holloman ex. Rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).
[72] *Guerra v. Rockdale Cnty., Georgia*, 420 F. Supp. 3d 1327, 1337–38 (N.D. Ga. 2019).
[73] *Ruch*, 2019 WL 1407012, at *6 (citing *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016)).

contraband in plain view – gave them reasonable belief to effectuate Plaintiff Smith's arrest. Accordingly, this act was undertaken pursuant to the performance of the Defendants' duties within the scope of their authority as Police Officers and is therefore discretionary.[74]

Having established that Defendants' conduct was discretionary, the burden now shifts to the Plaintiffs to: 1) establish that the arrest was in violation of the Plaintiff's constitutional right; and 2) that the violation was clearly established at the time of the arrest.[75] If the Plaintiff fails, this Court should dismiss all counts against Officer Abad and Sgt. Moline, as qualified immunity is total immunity from suit, rather than defense to a particular charge.[76]

## IV.  CONCLUSION

Based on the foregoing, the City Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiffs' Complaint and dismiss all of Plaintiffs' claims against it in their entirety.

This 28th day of October, 2025.

---

[74] *Guerra*, 420 F.Supp.3d at 1338 (citing *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect)).
[75] *See Christmas*, 51 F.4th at 1354; *see also Grider*, 618 F.3d at 1254.
[76] *Manners v. Cannella*, 891 F.3d 959, 967 (2018).

**RESPECTFULLY SUBMITTED,**

**PATRISE PERKINS-HOOKER**
*City Attorney*
*Georgia Bar: 572358*
*(please direct all communications to*
*the undersigned attorneys)*

/s/ *Jared Casto*
**JARED CASTO**
**Associate Attorney**
Georgia Bar No 216492
(470) 858-7102 *Direct*
jacasto@atlantaga.gov
*Staci J. Miller*
**STACI J. MILLER**
**Deputy Division Chief**
Georgia Bar No. 601594
(404) 546-4083 *Direct*
sjmiller@atlantaga.gov
*Attorneys for City Defendants*

**CITY OF ATLANTA DEPARTMENT OF LAW**
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Office: (404) 546-4100 (*main*)

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| GABRIEL SMITH and MAI AMIN, | ) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| vs | ) | FILE NO. 1:25-mi-99999-UNA |
| | ) | |
| OFFICER MATTHEW P. ABAD, In his | ) | |
| Individual and Official Capacity and | ) | |
| SERGEANT ANDREW MOLINE, In his | ) | |
| Individual and Official Capacity and | ) | |
| OFFICER JOHN DOE, In his Individual | ) | |
| and Official Capacity and CITY OF | ) | |
| ATLANTA, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

This is to certify that on this day, ***CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT*** was electronically filed using this Court's filing system and all parties listed below were served electronically as follows:

Gabriel Smith
Mai Amin
320 Baldwin Road Apt. 302
Odenton, Maryland 21113
Smith.gtaylor21@gmail.com
maiamin@icloud.com

This 28th day of October, 2025.

BY: /s/ *Jared Casto*
**JARED CASTO**

24

**Associate Attorney**
Georgia Bar No 216492
(470) 858-7102 *Direct*
jacasto@atlantaga.gov
**STACI J. MILLER**
**Deputy Division Chief**
Georgia Bar No. 601594
(404) 546-4083 *Direct*
sjmiller@atlantaga.gov
***Attorneys for City Defendants***

**CITY OF ATLANTA DEPARTMENT OF LAW**
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Office: (404) 546-4100 (*main*)