FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

DEC 1 2 2025

KEVIN P. WEIMER, Clerk
By_____Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Civil Division

GABRIEL SMITH , *et al*

      Plaintiffs,

vs.

OFFICER MATTHEW P. ABAD, *et al*

      Defendants,

Case No.: 1:25-cv-06152-SCJ

## PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS MOTION TO DISMISS AND REQUEST FOR A HEARING

**NOW COMES,** the Plaintiffs, Gabriel Smith and Mai Amin (collectively, "Plaintiffs"), pro se, and hereby submit their Response and Opposition to the Defendants' Joint Motion to Dismiss. For the reasons set forth herein, Plaintiffs respectfully request that the Court deny Defendants' Motion and permit this case to proceed.

### FACTUAL ALLEGATIONS

The following facts can be gleaned from Plaintiffs' First Amended Complaint ("FAC"), which this court must accept as true, and all inferences therefrom in favor of the Plaintiffs': Plaintiff Gabriel Smith had no ownership interest, leasehold, or other legal or equitable claim to the subject property at 489 Cairo Street, N.W. in Atlanta, Georgia, and did not reside there. His only connection to the location was minimal and did not extend to control or dominion over the premises. FAC at ¶8. When

1

defendant officers arrived at the property to execute a search warrant, Plaintiff immediately complied with orders to exit, followed all commands without hesitation, and demonstrated a cooperative and respectful demeanor throughout the encounter. FAC at ¶9. After Plaintiff left the property as directed, defendant officers detained and searched him, finding only a lawfully possessed firearm. Plaintiff was permitted by Georgia law to carry this firearm and was an active member of the United States Armed Forces at the time, with no prohibitions or restrictions on firearm ownership. FAC at ¶10. Plaintiff did not engage in any illegal conduct or suspicious activity, and no illegal narcotics, paraphernalia, or contraband were discovered on or near him. Defendant officers had neither reasonable suspicion nor probable cause to connect Plaintiff to any criminal activity. FAC at ¶11. According to defendants' own report, the narcotics recovered inside the subject property were attributable to other individuals, and there was no evidence Plaintiff possessed, controlled, or was even aware of these drugs. FAC at ¶12. Despite this, defendant officers arrested Plaintiff and falsely charged him with multiple serious crimes, including drug trafficking and possession of a firearm during a felony. The arrest report, warrant affidavit, and grand jury testimony each contained material misstatements and omitted exculpatory information that should have exonerated Plaintiff, and these documents were knowingly or recklessly prepared. FAC at ¶13. Plaintiff's arrest and detention took place outside the subject property, and no illegal substances were recovered from his person. The only items in Plaintiff's possession were his lawfully owned firearm, house keys, and a blue iPhone—which do

2

not support any connection to narcotics offenses. FAC at ¶14. Nevertheless, Officer Abad swore out an arrest warrant and testified before the grand jury, both times representing without basis that Plaintiff was in possession of the drugs found in the subject property. FAC at ¶15. Defendant officers executed the warrant without all defendants present inside the home, and they lacked a good faith basis to charge or prosecute Plaintiff, as they knew or should have known that Plaintiff neither possessed nor controlled the narcotics found. No impartial or adequate investigation was conducted before arresting and prosecuting Plaintiff. FAC at ¶17. Furthermore, Plaintiff had no ownership, leasehold, or custodial relationship to the subject property, and defendant officers had no evidence or reasonable grounds to claim otherwise. Constructive possession under Georgia law requires both the power and intent to exercise control over contraband—neither of which Plaintiff possessed. FAC at ¶18. At no time did officers observe Plaintiff engage in criminal activity, nor did they recover narcotics or contraband from his person or area of control. Despite this, Officer Abad stated at the police station that Plaintiff was "guilty by association," a remark lacking any legal foundation and showing an absence of lawful grounds for the arrest. FAC at ¶19. Because of these false charges, Plaintiff was subjected to criminal prosecution for over a year and had to defend himself against unsupported felony allegations, refusing plea offers based on facts that did not exist. FAC at ¶20. On October 14, 2024, after the State could not produce any credible evidence linking Plaintiff to the offenses charged, the Fulton County District Attorney dismissed all counts, and the case was

dismissed by the Superior Court. A reasonable review of the evidence would have ruled out probable cause for arrest or prosecution. FAC at ¶21. Atlanta Police Department officers' conduct violated Plaintiff's federal and state constitutional and statutory rights, including those under the Fourth and Fourteenth Amendments, 42 U.S.C. § 1983, and analogous rights under Georgia law. These actions also support claims for false arrest, false imprisonment, malicious prosecution, negligent supervision, and negligent training. FAC at ¶22.

The false arrest and prosecution substantially harmed Plaintiff's personal and professional life. He lost his position at Delta Airlines Security and suffered permanent damage to his parallel career in photography due to the false charges and ensuing stigma. He was also deprived of employment opportunities, including a position with the DC Metropolitan Police Department, and experienced severe financial losses, including credit deterioration and ongoing inability to meet financial obligations. Plaintiff endured emotional distress, anxiety, depression, and insomnia, requiring ongoing medical treatment. FAC at ¶23. Finally, Plaintiff's marital relationship to Plaintiff Mai Amin suffered severe and irreparable damage, including loss of consortium and profound strain. Plaintiff's honest reputation in his community, built over years of responsible work and civic involvement, was profoundly undermined. FAC at ¶24. Dismissal is improper where, as here, Plaintiffs have plausibly alleged multiple constitutional and state law violations arising from an unlawful arrest, false

4

statements in affidavits, and a pattern of misconduct within the Atlanta Police Department.

## STANDARD OF REVIEW

A motion under Rule 12(b)(6) merely tests the legal sufficiency of a complaint, requiring a court to construe the complaint liberally, assume all wellpleaded facts as true, and draw all reasonable inferences in favor of the plaintiff, *Bell Atlantic Corp. v. Twombly, 550* U.S. 544, 556-57 (2007). A complaint should never be dismissed because the court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein, Id. Relatedly, Federal Rule of Civil Procedure 8(a)(2) requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Konair US, LLC v. DGI II, LLC,* Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *7 (N.D. Ga. Jan. 14, 2021).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." *Konair US, LLC v. DGI II, LLC,* Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *8 (N.D. Ga. Jan. 14, 2021).

Notably, there is no heightened requirement of fact pleading of specifics – only a requirement that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder," B*ell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). To the contrary, all well-pleaded allegations in the complaint must be construed as true and in the light most favorable to the Plaintiff, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lowell v. American Cyanamid Co.*, 177 F.3d 1228, 1229 (11th Cir.1999). The Plaintiff also enjoys the benefit of all reasonable inferences from those allegations, *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). The court's inquiry on a Rule 12(b)(6) motion to dismiss is "context-specific," and the complaint must be evaluated in its entirety, See *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Even when considered under the two-prong approach used by the Supreme Court in analyzing the legal sufficiency of a complaint, Plaintiffs' amended complaint is sufficient to survive a motion to dismiss. The two-pronged approach requires a court to first "eliminate any allegations in the complaint that are merely legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This first prong excludes "threadbare recitals of a cause of action's elements, supported by mere conclusory statements," Iqbal at 680. It is only the "conclusory nature" of the allegations of the complaint "that disentitles

them to the presumption of truth," *Iqbal,* 556 U.S. at 681. Second, the court should assume that all well-pleaded factual allegations are true and then "consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief," *Iqbal* at 681.

## ARGUMENT

a) **Plaintiff Smith Has Alleged Facts Sufficient to Challenge the Lawfulness of His Arrest and the Existence of Probable Cause, Precluding Dismissal of His Unreasonable Search and Seizure Claim Under the Georgia Constitution[1]**

The crux of Defendants argument is that the Officer Defendants had probable cause to detain, arrest, and charge Plaintiff Smith simply because he was present at a property where a search warrant yielded a large quantity of drugs. They emphasize body-camera footage showing Plaintiff Smith as an occupant during the search, and claim that, since officers "could not exclude him as a suspect," his arrest was justified. For these reason, the Defendants moves to dismiss Count I, of the Complaint. But Defendants ignore both the factual allegations of the Complaint and controlling Georgia law governing probable cause and constructive possession.

At the outset, the Court is required to view the factual allegations in the light most favorable to Plaintiff Smith. As alleged in the Complaint, Plaintiff Smith had no ownership, leasehold interest, or any legal or equitable right in the subject property; nor did he live there. (FAC ¶8.) His connection to the premises was, at most,

---

[1] Defendants are seeking to Dismiss Count I of the Complaint, Unreasonable Search and Seizure, in addition to establishing that they had probable cause to arrest Plaintiff Smith.

incidental, with no evidence or indication that he exercised any control or authority over the home or its contents. Critically, the Complaint further alleges that throughout the execution of the search warrant—and during his detention—Plaintiff Smith engaged in no illegal conduct or suspicious behavior. No drugs, paraphernalia, or contraband of any kind were ever found on his person or within his immediate reach. (FAC ¶11.) The arrest report itself confirms that the narcotics at issue were located inside the residence and expressly identified as belonging to other individuals associated with the address. In short, there is no factual basis—either alleged in the Complaint or within the four corners of Defendants' Motion—that connects Plaintiff Smith to either the drugs or any direct criminal conduct. (FAC ¶12.)

Defendants' theory reduces the probable cause inquiry to little more than guilt by proximity: that anyone present during a search at a property containing drugs may be presumed a possessor, regardless of individual circumstances. This is not, and has never been, the law in Georgia. The Georgia appellate courts have made clear time and again that "mere presence at the scene of a crime," even if coupled with proximity to contraband, is insufficient to establish constructive possession. *See Hill v. State*, 358 Ga. App. 550, 855 S.E.2d 753 (2021). *In Hill,* the Georgia Court of Appeals reversed the conviction where the defendant, present in a home during a search, neither owned nor leased the property. The evidence showed the drugs were found elsewhere, and nothing directly linked the defendant to their possession or control. *The Hill* court explained that constructive possession demands evidence of both a defendant's power

and intent to control the substance, not just presence or ambiguous circumstances. Nor did *the Hill* court rely on speculation or unsubstantiated suspicions; it explicitly rejected the sufficiency of evidence where the defendant was not observed handling drugs, did not reside at the searched premises, and where others were more closely tied to the contraband. Here, as *in Hill*, there is no factual allegation—nor does the video evidence submitted by Defendants fill the gap—that Plaintiff Smith exercised any degree of dominion, control, or ownership over the drugs found, or had knowledge of their existence. Even typical indicators of constructive possession—such as fleeing police or being linked by documentation to the address—were insufficient in *Hill*, and are wholly absent in this case as well.

The body-worn camera video submitted by Defendants—specifically, the video **labeled Warrant-489**—does not support their claim of probable cause. To the contrary, the video excerpts highlighted by Plaintiff only further demonstrate the lack of individualized suspicion as to Plaintiff Smith. For example: At 34:43, an officer can be heard referring to an unidentified **"white shirt" and stating, "it's some dope behind that Porsche,"** a comment entirely unrelated to Plaintiff Smith's actions or presence. At 42:00, the officers actively deliberate, "who's the primary guy; the guy who came out the house"—eventually identifying the investigation's target as **McKibbins, not Plaintiff Smith**. At 46:00, the statement is made, "the keys in the door have the keys to the car's," another logistical observation that does not implicate Smith. Crucially, at 55:00, officers are heard saying, **"I don't want to take everybody depending on the**

9

**debriefing,**" acknowledging explicit uncertainty about whether all persons present should be arrested or charged. Finally, at 1:19:00, it is stated outright, **"the main target is McKibbins,"** underscoring that Smith was not the subject of law enforcement's suspicion or the focus of the operation.

Not only do these statements, captured in **Warrant-489**, identify third parties as the actual targets, but they also reflect the officers' awareness that simply being present on the scene did not justify arresting every individual. There is no point in the recording where Smith is implicated in possession, control, or knowledge of any of the contraband found. Nor is there any reference to Smith as a resident, owner, or person with dominion over the property. These admissions from the video strongly support Plaintiff Smith's factual assertions and further erode Defendants' contention that probable cause existed.

Georgia courts have consistently held that, unless there is direct or circumstantial evidence showing a suspect's control, ownership, or actual participation in the criminal activity, probable cause cannot arise solely from his presence. There is no suggestion that Smith's behavior or circumstances excluded "every reasonable hypothesis" of innocence — the required standard under state law.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. Arrests are "seizures" of "persons" and must be reasonable under the circumstances. *Wesby*, 583 U.S. at 56, 138 S.Ct. 577. " Probable cause exists when "the

10

facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish `a probability or substantial chance of criminal activity.'" Washington v. Howard, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting Wesby, 583 U.S. at 57, 138 S.Ct. 577). "Probable cause does not require conclusive evidence and `is not a high bar.'" Id. at 899 (quoting Wesby, 583 U.S. at 57, 138 S.Ct. 577).he Defendant cited *Ruch v. McKenzie*, 2019 WL 1407012, at *5 (N.D. Ga. Mar. 28, 2019) (citing *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest.")). Based on the articulated facts set forth in the Complaint; the defendant violated Fourth Amendment.

For these reasons, Plaintiff Smith's pleading contains more than enough factual material to permit a reasonable jury to find a lack of probable cause for his arrest, detention, and prosecution—especially when applying the motion to dismiss standard, where all allegations and reasonable inferences are drawn for the plaintiff. The body-worn camera footage, even if considered, fails to contradict or undermine these factual allegations. At this stage, the First Amended Complaint is facially plausible as its content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Id. Although the "plausibility standard is not akin to a probability requirement at the pleading stage," it demands "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of the claim." Konair US, LLC v. DGI II, LLC, Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *8 (N.D. Ga. Jan. 23, 2021).

Indeed, "probable cause is always a question for the jury unless from undisputed facts it is obvious to the court that it does or does not exist." **Harmon v. Redding, 135 Ga. App. 124, 125-26 (1975)** "Only where the material facts are not in dispute, or when only one reasonable inference can be drawn from the evidence, does the existence of probable cause become an issue of law for the court to resolve." *Kviten v. Nash*, 150 Ga. App. 589, 590-91 (1979).

**b) Plaintiff's Complaint Has Plead Sufficient Facts To Support His Malicious Prosecution Claim In Count II; and It Should Not Be Dismissed.**

Defendants seek dismissal of Count II of the First Amended Complaint, arguing that the existence of probable cause for Plaintiff Smith's arrest forecloses any claim for malicious prosecution under 42 U.S.C. § 1983. Plaintiff Smith, however, incorporates all arguments made in Section (a) above, which demonstrate the lack of probable cause not just for his arrest, but also for the institution and continuation of criminal proceedings against him.It is firmly established in the Eleventh Circuit that the Fourth Amendment's protection against malicious prosecution is violated when criminal proceedings are sustained after probable cause ceases to exist. See *Kjellsen v. Mills*, 517 F.3d 1232, 1238 (11th Cir. 2008) ("Probable cause is required to continue a prosecution, not just to arrest a defendant or to institute a prosecution."); *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003) ("A criminal prosecution continued . . . without probable cause" supports a malicious prosecution claim.) Similarly, *in Dunn v. Norrington*, No. 1:08–CV–2217-JEC, 2010 WL 11527349, at *8 (N.D. Ga. Mar. 29, 2010), aff'd, 411 F. App'x

279 (11th Cir. 2011), the court denied summary judgment to officers where initial probable cause was undermined after later evidence surfaced exonerating the plaintiff, confirming that probable cause must be present not only at arrest but throughout the prosecution.Here, the FAC contains ample allegations of misconduct and lack of probable cause to sustain a claim for malicious prosecution. Specifically, Plaintiff pleads that Defendants Officer Matthew P. Abad, Officer John Doe, and Sergeant Andrew Moline—acting jointly and under color of law—initiated and continued a felony prosecution against Plaintiff Smith by arresting him without probable cause and securing the filing of grave criminal charges, including trafficking in heroin and cocaine, possession of marijuana and methamphetamine with intent to distribute, and possession of a firearm during the commission of a felony. (FAC ¶38.) The Complaint further alleges that these proceedings were predicated on knowingly false statements and deliberate omissions by the Defendant Officers, including sworn affidavits by Officer Abad in the arrest warrant and incident report, later ratified by Sergeant Moline.Defendants' theory of the case—that Smith constructively possessed drugs found in a home where he neither resided nor exercised control—lacked any factual or evidentiary basis, as documented in the pleadings. (FAC ¶39.) Plaintiff Smith avers he was never observed engaging in illegal conduct, was not found in possession of contraband, and that the Defendant Officers overlooked exculpatory evidence, fabricated material facts, and misrepresented circumstances in official reports provided to prosecutors and the court. (FAC ¶40.) These actions, alleged to be undertaken with

13

malice and a reckless disregard for the truth, form the heart of a viable malicious prosecution action. Viewed in the light most favorable to Plaintiff Smith, these detailed allegations, when accepted as true at the pleading stage, are more than sufficient to state a claim under federal law. Plaintiff is entitled to discovery — including review of grand jury testimony and related documents — to further substantiate his claims and establish the elements of malicious prosecution. See *Konair US, LLC v. DGI II, LLC,* Civil Action No. 1:19-cv-05728-SDG, 2021 U.S. Dist. LEXIS 7609, at *8 (N.D. Ga. Jan. 23, 2021) ("[T]he purpose of discovery is to allow parties to flesh out claims and defenses, not require them to prove their entire case at the pleading stage."). Accordingly, the facts set out in the FAC, when construed in Plaintiff's favor, sufficiently support his malicious prosecution claim. Defendants' Motion to Dismiss Count II should therefore be denied.

### c) Plaintiff Has Plead Sufficient Fact Supporting His Claims Against the City Defendant

Defendants move to dismiss Plaintiff's Monell claim against the City, contending that Plaintiff has failed to allege sufficient facts to establish municipal liability. This argument is unavailing at the pleading stage in light of both the detailed allegations of the FAC and the controlling case law.

Plaintiff Smith alleges that the City, through its final policymakers and supervisory officials, was responsible for ensuring that its officers — including Defendants Officer Matthew P. Abad, Sergeant Andrew Moline, and Officer John Doe — were adequately trained, supervised, and appropriately disciplined, in line with

14

constitutional and federal requirements. (FAC ¶49.) Plaintiff further alleges that the City was, or should have been, on notice of a pattern or widespread practice among APD officers involving unconstitutional behaviors: making arrests without probable cause, misrepresenting facts in arrest affidavits and police reports, and pursuing criminal prosecutions unsupported by sufficient evidence. Plaintiff points not only to prior complaints and lawsuits, but also to internal affairs investigations and the inherent risks associated with unsupervised police activity, as grounds for the City's knowledge. (FAC ¶54.) Despite being on such notice, the City is alleged to have taken no reasonable steps to address, train, discipline, or otherwise correct these violations — facts that, if proven, raise precisely the sort of "deliberate indifference" supporting Monell liability.

The Supreme Court has long recognized that a city can be held liable under 42 U.S.C. § 1983 for failing to train or discipline its officers when such failure amounts to deliberate indifference to the constitutional rights of citizens. See *Canton*, 489 U.S. at 388–89. When the widespread practice of ignoring officer misconduct becomes the "moving force" behind a constitutional violation, such failure constitutes actionable city "policy or custom" under § 1983. Id. at 389 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). As noted in *Arnold v. Bunn*, 2013 WL 12099356, at *1 (N.D. Ga. Mar. 29, 2013), aff'd, 565 F. App'x 812 (11th Cir. 2014), the failure to retrain or discipline in the face of repeated complaints — particularly where complaints are routinely dismissed as "not sustained" — can create an inference that the

City has ratified unconstitutional conduct, making summary judgment for the City inappropriate. See also *Favors,* 2021 WL 915355, at \*7 ("a single constitutional violation may establish municipal liability when there is 'sufficient independent proof that the moving force of the violation was a municipal policy or custom'") (quoting *Vineyard v. Cty. of Murray,* Ga., 990 F.2d 1207, 1212 (11th Cir. 1993)).

Here, Plaintiff's allegations mirror these precedents. He alleges not only episodic failures tied to his own case, but also a systemic, City-wide policy of inaction that is the "functional equivalent" of a municipal decision to violate constitutional rights. See *Canton,* 489 U.S. at 394–95. For purposes of a motion to dismiss, these facts must be taken as true, and they suffice to state a plausible claim for municipal liability under Monell. Accordingly, Plaintiff Smith has adequately pleaded facts to support his claim against the City. Defendants' motion to dismiss the Monell claim must be denied.

### d) Plaintiff Has Plead Sufficient Facts Supporting His Claims Against Defendant Moline

Plaintiff's First Amended Complaint asserts a claim against Defendant Sergeant Andrew Moline under the theory of supervisory liability pursuant to 42 U.S.C. § 1983. Defendant Moline seeks dismissal, contending that the existence of probable cause for Plaintiff Smith's arrest precludes any claim and that supervisory liability has not been adequately pled. These arguments do not withstand scrutiny given the specific factual allegations set forth in the FAC and controlling Eleventh Circuit precedent. Plaintiff incorporates the arguments in Sections (a) through (c), which detail the absence of probable cause and the constitutional violations suffered by Plaintiff Smith. However,

even setting aside these arguments, the FAC sets out with particularity the direct involvement, active participation, and supervisory failures of Sergeant Moline. At all relevant times, Defendant Moline was a sworn supervisory officer with the Atlanta Police Department, functioning under the color of state law and within the scope of his official duties. (FAC ¶92.) He was the direct supervisor of both Officer Abad and Officer John Doe and was present on scene during the execution of the search warrant at 489 Cairo Street, N.W., on July 21, 2023. (FAC ¶93.) As supervisor, Moline bore heightened responsibilities — not just to oversee subordinates, but to ensure that every law enforcement act complied with the Constitution, federal law, and APD standards.

Sergeant Moline was not a passive observer; he actively participated in the planning, execution, and aftermath of the search warrant, including the detention, search, and arrest of Plaintiff Smith. (FAC ¶94.) He personally observed, or had the clear opportunity to observe, all material interactions between Plaintiff Smith and the Defendant Officers. With full knowledge of the facts, Moline had a non-delegable duty to intervene and prevent constitutional violations by his subordinates, particularly as to ensuring arrests were based on probable cause and official documents truthfully reflected events. He was legally and departmentally obligated to prevent actions undertaken without factual or legal basis. (FAC ¶95.)

Despite this duty and his presence at the scene, Moline failed to intervene or correct the unlawful seizure, arrest, and prosecution of Plaintiff Smith, even though he knew — or should have known — that Smith was not engaged in criminal activity, that

17

no drugs or contraband were discovered on his person, and that probable cause was lacking for all charges pursued. (FAC ¶96.) More, Sergeant Moline ratified and approved the official police reports, affidavits, and charging documents prepared by Officer Abad, which falsely accused Plaintiff Smith of drug possession and trafficking. Moline reviewed, signed, and authorized these documents for submission to judicial authorities, directly enabling and perpetuating the initiation and continuation of baseless criminal proceedings. (FAC ¶97.) Sergeant Moline's conduct transcended "mere supervisory oversight." He played an active, decision-making role in both Plaintiff Smith's initial detention and arrest and in the creation and maintenance of the false criminal narrative sustaining those charges. (FAC ¶98.) By failing to supervise and correct his subordinates' constitutional violations, and by his own participation and ratification of their actions, Moline acted with deliberate indifference to Plaintiff Smith's Fourth and Fourteenth Amendment rights. (FAC ¶99.) Moline's conduct was accordingly a direct and proximate cause—the moving force—behind the constitutional injuries Plaintiff Smith suffered, including unlawful seizure, false arrest, malicious prosecution, and resulting harm. (FAC ¶100-101.) The Eleventh Circuit is clear that a supervisor may be held liable under § 1983 where a custom or policy, a

failure to implement needed policies despite known risks, or grossly negligent supervision is causally linked to the injury. See Sorensen v. Nocco, 677 F. App'x 570, 573 (11th Cir. 2017); Simpson v. Stewart, 386 F. App'x 859, 860 (11th Cir. 2010); Greason, 891 F.2d at 837 n.18, 838; Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991);

Williams v. Santana, 340 F. App'x 614, 617 (11th Cir. 2009). Further, direct liability attaches to any officer — supervisory or otherwise — who fails to intervene when constitutional violations occur in his presence. Slaughter v. Bryson, No. 5:15-CV-90, 2018 WL 1400976, at *13 (S.D. Ga. Mar. 20, 2018). In sum, Plaintiff has pled not only the requisite elements of supervisory liability under § 1983, but also a specific factual basis showing Sergeant Moline's direct participation, deliberate indifference, and ratification of unconstitutional conduct. For these reasons, Defendant Moline's motion to dismiss should be denied.

### e) Plaintiff's Complaint Has Plead Sufficient Facts To Support His State Law Malicious Prosecution Claim

Defendant seeks dismissal of Plaintiff's state law claim for malicious prosecution on the grounds that the officers had probable cause to arrest Plaintiff Smith. Plaintiff incorporates the arguments raised in Sections (a) through (d), which demonstrate that probable cause was lacking and that Plaintiff's arrest and prosecution were constitutionally deficient. For these reasons, Plaintiff's state law claims must not be dismissed. To state a valid claim for malicious prosecution under O.C.G.A. § 51-7-40, Plaintiff must allege that the criminal prosecution was: (1) for a criminal offense; (2) instigated under a valid warrant, accusation, or summons; (3) terminated in favor of the plaintiff; (4) pursued with malice; (5) without probable cause; and (6) caused damage to the plaintiff. See *Jackson v. Kmart Corp.*, 851 F. Supp. 469, 472 (M.D. Ga. 1994) (quoting *Medoc Corp. v. Keel*, 305 S.E.2d 134, 136 (Ga. Ct. App. 1983)). See also *Trident Wholesale, Inc. v. Brown*, 370 Ga. App. 505, 509 (2024); O.C.G.A. § 51-7-40.

19

Plaintiff Smith has alleged facts supporting each of these elements. Importantly, "[w]ant of probable cause is the gravamen of an action for malicious prosecution." *Lagroon v. Lawson*, 328 Ga. App. 614, 622 (2014). Pursuant to O.C.G.A. § 51-7-43, "[l]ack of probable cause shall exist when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused. **Lack of probable cause shall be a question for the jury, under the direction of the court."**

The FAC specifically alleges that, on July 21, 2023, Defendant Officers Matthew P. Abad, John Doe, and Sergeant Andrew Moline, acting under color of law and in the course of their employment with the Atlanta Police Department, initiated and continued a criminal prosecution by arresting Plaintiff Smith and causing formal charges for multiple felonies to be filed against him. (FAC ¶¶61, 63.) The prosecution in this matter was not only initiated by the officers but also perpetuated through official reports and sworn affidavits that falsely asserted Plaintiff's possession of drugs, despite the absence of any evidence found on his person, in his control, or connecting him to the contraband recovered in the search. (FAC ¶64.)Defendant Officer Abad's warrant for Plaintiff's arrest contained false representations and material omissions, which were ratified and approved by Defendant Sergeant Moline and furthered by Defendant Officer Doe. (FAC ¶65.) These actions were undertaken intentionally and with actual malice, in reckless disregard for the truth and Plaintiff Smith's rights. (FAC ¶66.)

Plaintiff Smith was subjected to arrest, incarceration, and criminal prosecution for over a year as a direct result of Defendants' conduct. He suffered the ongoing ordeal and expenses associated with defending against unfounded criminal charges, as well as the loss of employment, reputational harm, financial loss, and emotional suffering. (FAC ¶¶67, 69.) On October 14, 2024, the prosecution terminated in Plaintiff's favor when the Fulton County District Attorney's Office entered a Nolle Prosequi and all charges were dismissed by the Superior Court of Fulton County. This favorable termination is both a necessary element and strong support for Plaintiff Smith's state law claim. (FAC ¶68.) The facts alleged in the FAC are sufficient, if proven, to establish every element of malicious prosecution under Georgia law. Plaintiff Smith alleges that Defendant Officers acted intentionally, willfully, and with reckless disregard of Plaintiff Smith's legal rights, knowingly pursuing charges that lacked probable cause and inflicting substantial harm as a result. (FAC ¶70-71.)

Accordingly, Plaintiff has pleaded all required elements for malicious prosecution under O.C.G.A. § 51-7-40. Defendants' arguments to the contrary are contrary to both the facts and applicable law, and the Motion to Dismiss as to this state law claim must be denied. Plaintiff Smith is entitled to discovery to be able to prove each element of his claims, including, obtaining the prosecutions file, grand jury transcript and other evidence. This case is at the pleadings stage, and the Defendants Motion to Dismiss is premature.

Furthermore, here, the undisputed evidence shows that Plaintiff's Smith arrest and subsequent prosecution occurred under a valid warrant, was terminated favorably to Plaintiff Smith, and caused damage to Smith. Despite Defendant's conclusory contention that Smith cannot establish that his arrest and prosecution were done with "malice in the absence of probable cause," these considerations are each within the purview of a finder of fact.

### f) Plaintiff's Complaint Pleads Sufficient Facts to Support His False Arrest and Imprisonment Claims

Plaintiff incorporates by reference the arguments raised in Sections (a) through (e), as if fully restated herein. Defendants nonetheless contend that Plaintiff fails to state a claim for false arrest and false imprisonment under Georgia law, again resting their argument on the existence of probable cause—a contention flatly contradicted by both the allegations in the FAC and the governing law. Under Georgia law, false arrest is defined as the unlawful detention of another's person for any length of time, whereby that individual is deprived of personal liberty without legal justification or probable cause. Law enforcement officers may not detain or arrest an individual absent actual, objectively reasonable probable cause to believe that the individual has committed an offense. See O.C.G.A. §§ 51-7-1, 51-7-20; see also *Jones v. Walker*, 167 Ga. App. 286, 287 (1983).The only meaningful distinction between malicious arrest and malicious prosecution under Georgia law is whether the prosecution was "carried on"; lack of probable cause is central to both. See *Smith v. Embry*, 103 Ga. App. 375, 119 S.E.2d 45 (1961), overruled on other grounds, *Ferrell v. Mikula*, 295 Ga. App. 326, 672 S.E.2d 7

(2008). To establish malice in this context, it is not necessary for Plaintiff to prove personal hatred, ill-will, or specific revenge; malice can be inferred from a total lack of probable cause, and whether malice exists is a classic jury question. *Bailey v. Century Fin. Co.*, 118 Ga. App. 90, 91-92 (1968); Jones v. *Walker*, 167 Ga. App. at 287. The facts alleged in the FAC squarely support all elements of Plaintiff's false arrest and imprisonment claims. At all relevant times, Defendant Officers Matthew P. Abad, John Doe, and Sergeant Andrew Moline were acting within the course and scope of their APD employment, subject to state law, including Georgia's prohibitions on false arrest and unlawful detention. (FAC ¶82.) On July 21, 2023, during the execution of a search warrant at 489 Cairo Street, N.W., Defendant Officers ordered Plaintiff Smith out of the premises, detained him, and conducted a search. Plaintiff complied fully, offering no threat or resistance. The search yielded only lawfully possessed items—a legally owned firearm, house keys, and a blue iPhone. No drugs or contraband were located on Plaintiff Smith or nearby. (FAC ¶84.) Defendant Officers did not observe Plaintiff engaged in any criminal act and had no factual or legal basis to suspect him of such. The incident report further confirmed that any contraband discovered in the property was attributable to another individual—not Plaintiff Smith—and was not found on his person or within his control. (FAC ¶85.) Despite the total absence of probable cause, Defendant Officers intentionally and unlawfully detained, handcuffed, and transported Plaintiff Smith to jail, charging him with numerous felonies—Trafficking in Heroin, Trafficking in Cocaine, Possession of Marijuana with Intent to Distribute,

Possession of Methamphetamine with Intent to Distribute, and Possession of a Firearm During the Commission of a Felony—each wholly lacking any evidentiary basis. (FAC ¶86.) Officer Abad later swore out an arrest warrant relying on false information and material omissions, ratified and approved by Sergeant Moline. Officer Doe further participated in the unlawful detention, arrest, and preparation of the incident report, perpetuating Plaintiff Smith's false and baseless arrest. (FAC ¶87.) These actions were not accidental but intentional, willful, wanton, and carried out in reckless disregard of Plaintiff Smith's rights under Georgia law. No objectively reasonable officer in these circumstances could have believed probable cause existed for the actions taken. (FAC ¶88.) Given these clear, specific allegations, Plaintiff has pledged every element required for claims of false arrest and false imprisonment under Georgia law. Whether malice can be inferred from the lack of probable cause and whether the officers' conduct was legally justified are both classic questions for a jury. Accordingly, Defendants' motion to dismiss Plaintiff's false arrest and imprisonment claims under Georgia law must be denied.

### g) Plaintiff's Complaint Pleads Sufficient Facts to Support His Battery Claim

Defendant moves to dismiss plaintiffs battery count on the basis that the officer had probable cause. A simple battery is committed when someone "[i]ntentionally makes physical contact of an insulting or provoking nature with the person of another." O.C.G.A. § 16-5-23(a)(1). Plaintiff Smith claims that Defendants committed a battery when the unlawfully arrested him, without probable cause to do so. At the

24

pleadings stages, and accepting the facts of the FAC as true, plaintiff smith has stated a claim, and dismissal would therefore be improper.

### h) Plaintiff Amin Has Alleged Sufficient Facts to Support Her Loss of Consortium claims; thus, It Shall Not Be Dismissed

Loss-of-consortium claims survive so long as any underlying tort survives. Because Plaintiffs' constitutional and state-law claims remain viable, dismissal of Mrs. Amin's claim is improper.

### i) Defendants Motion to Dismiss Plaintiff's Declaratory Judgment Count is Without Merit.

The Crux of Defendants argument for dismissal of the Declaratory Judgment actions, is that Plaintiff Smith, must first move to have his record restricted. Contrary to Defendants arguments, Plaintiff Smith record was restricted prior to filing this case. Exhibit A. Since the City Defendants only argument was that Plaintiff failed to comply with a request to restrict. The Court should deny their Motion to Dismiss Plaintiff Smiht's declaratory judgment action. To be clear, Plaintiff's declaratory judgment action is for this court to **declare that the maintenance of a public criminal record under these circumstances is unlawful, unjust, and contrary to the interests of justice, and that the record should be sealed, expunged, or otherwise sanitized** to prevent further harm.

### j) Defendants Are Not Entitled to Qualified Immunity

Defendants assert entitlement to qualified immunity, contending that their conduct did not violate any clearly established constitutional right. This argument fails

on both the law and the facts alleged in the FAC. Qualified immunity is a judicially created doctrine that shields government actors from liability for civil damages so long as their conduct does not violate a "clearly established right." See *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019). A right is clearly established if its contours are "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Id. The Eleventh Circuit has made clear that a plaintiff may show that a clearly established right was violated either by identifying case law with "materially similar facts," or by demonstrating that a broader, clearly established principle should control the novel facts in a situation. Id. at 1310 (quoting *Mercado v. City of Orlando,* 407 F.3d 1152, 1159 (11th Cir. 2005)).

Here, Defendants' conduct violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments. Well before the events giving rise to this lawsuit, it was firmly established that an arrest without probable cause violates the Fourth Amendment. See *United States v. Floyd,* 281 F.3d 1346, 1348 (11th Cir. 2002) ("Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."); *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (reversing dismissal where probable cause was disputed). The Eleventh Circuit has repeatedly held that qualified immunity is not available to officers who make arrests without probable cause, particularly after they elect "not to obtain easily discoverable facts" or "unreasonably disregard[]" exculpatory evidence.

26

*Cozzi v. City of Birmingham*, 892 F.3d 1288, 1295 (11th Cir. 2018); *Kingsland v. City of Miami*, 382 F.3d 1220, 1228 (11th Cir. 2004). An officer may not "turn[ ] a blind eye to immediately available exculpatory information." *Kingsland*, 382 F.3d at 1228; see also Daniels v. Bango, 487 F. App'x 532, 537 (11th Cir. 2012) (denying immunity where facts required further investigation).

Further, the Eleventh Circuit has held that **continuation of a prosecution, or prolonged detention,** after probable cause has dissipated, also violates clearly established law. *Kjellsen v. Mills*, 517 F.3d 1232, 1238 (11th Cir. 2008); *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003); *Dunn v. Norrington,* 2010 WL 11527349, at *8 (N.D. Ga. Mar. 29, 2010), aff'd, 411 F. App'x 279 (11th Cir. 2011); *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1288 (M.D. Ga. 2012) (citing *Cannon v. Macon Cty.*, 1 F.3d 1558, 1563 (11th Cir. 1993)). The law imposes a duty on law enforcement to conduct a reasonable investigation where the facts would lead a reasonable officer to question probable cause. In this case, Plaintiff has alleged facts—not only suggesting an absence of probable cause, but also a willful disregard of readily available exculpatory evidence and the fabrication and ratification of false official statements in support of his arrest and prosecution. These are precisely the kinds of constitutional violations that courts in this Circuit have repeatedly found to defeat qualified immunity at the pleading stage. Defendants' claimed entitlement to qualified immunity is unsupported by controlling law and cannot be resolved on a motion to dismiss where there are genuine disputes of material fact about what the officers knew, what they did, and whether any

reasonable officer in their position would have believed probable cause existed. See *Skop*, 485 F.3d at 1137, 1143 ("[W]here the resolution of disputed critical facts determines on which side of this line the officer's conduct fell, dismissal is inappropriate.").Accordingly, it is clear that Defendants are not entitled to qualified immunity, at the pleading stage of the case and their motion to dismiss on this ground must be denied.

### k) Plaintiffs ' Should Be Afforded Leave to Amend Their Complaint

If this Court finds that Plaintiffs' complaint is not a model of clarity, Plaintiffs' respectfully request leave to file an Amended Complaint to correct any errors, or to clarify facts. The Eleventh Circuit has elaborated on the meaning of the phrase "when justice so requires," summarizing the rule as follows: In the absence of any apparent  or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be "freely given." Rosen v. TRW, Inc., 979 F.2d 191, 194 (11th Cir. 1992) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). In connection with a motion for leave to file an amended complaint, the Eleventh Circuit has observed that **"[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint,"** Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005)(per curiam); Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001);

Cummings v. Mitchell, 2019 U.S. Dist. LEXIS 161716 (fn. 1)(S.D. Ga. Sept. 20, 2019);

Daesang Corp. v. NutraSweet Co., 2019 U.S. Dist. LEXIS 148436 (fn. 1)(S.D. Ga. Aug.

30, 2019). The amended pleading at issue is the Plaintiff's first effort to amend her

complaint.

## CONCLUSION

Wherefore, Plaintiff prays that this Court properly exercise its discretion and

serve the interests of justice by denying the instant Motion, and for such other relief as

may be necessary and proper.

### CERTIFICATE OF COMPLIANCE

Pursuant to Local R. 7 .1(D), this is to certify that the foregoing complies with

the font and point setting approved by the Court in Local R. 5 .1(B). The foregoing

COMPLAINT was prepared on a computer, using Book Antigua 13 point font.

Respectfully Submitted,

*Gabriel Smith*
_____

**GABRIEL SMITH**
PRO-SE PLAINTIFF
Email:  smith.gtaylor21@gmail.com

*Mai Amin*
_____

**MAI AMIN**
PRO-SE PLAINTIFF
Email:  maiamin@icloud.com

6087 Majors Lane#6
Columbia, Maryland 21045

29

717-414-3441
Fax: 443-213-1480

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Civil Division

**GABRIEL SMITH** *, et al*

       Plaintiffs,

vs.

**OFFICER MATTHEW P. ABAD,** *et al*

       Defendants,

Case No.: 1:25-cv-06152-SCJ

## CERTIFICATE OF SERVICE

I hereby certify that I mailed foregoing Response to Motion to Dismiss on this

___12__ day of _____December_____, 2025. The CM/ECF system will automatically

send email notification of such filing to the following attorneys of record. A copy also

has been mailed first class mail postage prepaid to:

**JARED CASTO, ESQUIRE**
**STACI J. MILLER, ESQUIRE**
CITY OF ATLANTA LAW DEPARTMENT
55 Trinity Avenue, SW, Suite 5000
Atlanta, Georgia 30303-3520
Counsel for Defendants

*Gabriel Smith*

_____

Gabriel Smith
Plaintiff

31

**OFFICE OF THE FULTON COUNTY DISTRICT ATTORNEY**
**ATLANTA JUDICIAL CIRCUIT**
**136 PRYOR STREET SW, 3RD FLOOR**
**ATLANTA, GEORGIA 30303**

*Fani T. Willis*
**District Attorney**

**TELEPHONE 404-613-7431**

RESTRICTED
NOV 15 2024
FULTON CO DISTRICT ATTORNEY, AJC

Date: November 15, 2024

Dear **GABRIEL SMITH**,

Your criminal history record restriction request has been reviewed and completed for the arrest listed below. The result of your request is listed below.

You may obtain an updated copy of your criminal history from your local Georgia police department or sheriff's department to confirm (fees may apply).  Please keep in mind, some employers use private companies to obtain criminal history records.

If you have any questions or concerns, please feel free to call the number below and someone will assist you.

| CASE NUMBER: | CHARGES: | RESULTS: |
|---|---|---|
| 23SC191795 23CP220367 23DA06937 | TRAFFICKING IN HEROIN | APPROVED FOR RESTRICTION |

Thank you,
**Ramona Toole**
Deputy Assistant District Attorney
Fulton County District Attorney's Office
404-612-3017 (direct)

Exhibit A